ATHANASIOU, by guardian *ad litem,* Respondent, vs. GARTON TOY COMPANY, Appellant.

*April 14—May 1, 1914.*

*Master and servant: Elevators: Negligent maintenance: Injury to servant: Contributory negligence: Special verdict: Harmless errors: Instructions to jury: Excessive damages.*

1. In an action for injuries to an employee in a toy factory—upon evidence showing, among other things, that he was a Greek, nineteen years old, not long in this country, of average intelligence, but not familiar with the construction and operation of elevators; that he had not been instructed how to use the elevator or warned of any danger; that, with a truck load of materials which he had been ordered to move from one floor to another by the elevator, he came to the opening in the shaft and, there being no bell to call the operator and no tell-tale chains or other means of telling where the elevator was, put his head over the gate and was immediately struck by the elevator descending upon him; and that the gate was less than four feet high, instead of five and one-half feet as required by an order of the industrial commission,—the question of his contributory negligence is *held* to have been one for the jury.

2. Where certain of the findings in a special verdict are sufficient to support the judgment, alleged errors relating to other findings are immaterial.

3. Defendant's negligence being conceded, the fact that the court answered the question relating thereto in the special verdict did not constitute error on the ground that such answer indicated to the jury that they should find plaintiff not guilty of contributory negligence.

4. Defining correctly, in the charge, a word used in a question of the special verdict, so as to inform the jury of the true meaning of

such question, is not error even though it informs the jury of the effect of their answer to the question.

5. In charging the jury upon the question of contributory negligence it is proper to call their attention to the concrete situation and to instruct them to take into consideration all the facts and circumstances disclosed by the evidence, including plaintiff's specific conduct. The charge upon that subject in this case, though not strictly accurate, is *held* not to have been misleading.

6. Plaintiff having, as the result of his injury, lost the sense of hearing in one ear and partially in the other, had ten teeth and part of one jaw knocked out, and the septum of the nose crowded to one side so as to totally close one opening, and having been unconscious for a long time, in the hospital for twenty-two days, and subject since to spells of dizziness when working, an award of $5,000 was not excessive.

APPEAL from a judgment of the circuit court for Sheboygan county: MICHAEL KIRWAN, Circuit Judge. *Affirmed.*

Action for personal injury. Plaintiff was employed in defendant's toy factory, a four-story building about 200 feet long and 60 or 70 feet wide, in the northeast corner of which was a freight elevator that served all the floors in the factory building and also a warehouse to the east separated from it by a partition wall, the floors of which were on a higher level than those of the factory by two feet eight inches. The elevator was in charge of an operator. The entire third floor of the factory was used as a paint and varnish shop, the fourth floor as a shipping room. There was a doorway in the partition wall between the paint shop and the third floor of the warehouse sixteen feet south of the elevator shaft with a flight of three or four steps leading from the paint shop to the third floor of the warehouse, but this doorway did not serve for the transfer of goods between paint shop and warehouse. That was done by means of the elevator. On the paint-shop side of the elevator the opening into the elevator shaft was seven feet one inch high and five feet five inches wide, protected by a slat gate that could be raised and lowered. The opening on the warehouse side of the shaft at the third floor was six feet

eleven and one-quarter inches high and six feet one inch wide, protected by a semi-automatic slat gate three feet eleven inches high. The gate was raised by hand by the operator of the elevator when it reached the floor, caught at the top, and remained up when the elevator was stationary. When the elevator moved up or down the gate came down. On the paint-shop side of the elevator there was a bell to call the operator, but none on the warehouse side. The elevator shaft was well lighted. There was also another elevator on the north wall, about fifty feet west of the one described, on which most of the material for the paint shop was brought on trucks and distributed to the workmen, and near it was a faucet used by the employees for drinking and washing purposes. The material was taken out of the paint shop by the elevator in the northeast corner of the room, and during the time plaintiff worked therein from July 12 to August 6, 1912, from seventy-five to one hundred truck loads were daily moved out of the paint shop. Plaintiff did various work in the paint shop, such as dipping toys and painting boards, and worked most of the time within seventy or seventy-five feet of the northeast elevator and about thirty feet from the east wall of the paint shop.

On the 6th day of August plaintiff was directed by the assistant foreman to go to the warehouse for a truck of material and take it into the paint shop by means of the elevator. He went into the warehouse, took the truck of material to the elevator shaft, looked over the gate to see if the elevator was down, when it descended upon him inflicting the injuries complained of. The elevator had no tell-tale chains. The first question of the special verdict was:

"Considering that at the time when plaintiff was injured by defendant's elevator, it had no tell-tale chains thereon and its gate was only three feet and eleven inches in height, was it negligence amounting to want of ordinary care on defendant's part to direct the plaintiff to use the elevator at that time to move a truck from one part of defendant's factory to another part of it?"

JANUARY TERM, 1914. 283

This question the court answered in the affirmative. The jury found (2) that the injury which the plaintiff received was the natural and probable consequence of the negligence which is specified in the first question; (3) that defendant's proper representative should reasonably have foreseen before plaintiff was injured that the operation of the elevator without said chains, and with a gate of the height above stated, would probably cause injury to some employee of defendant performing a duty of his employment; (4) that defendant failed to properly and sufficiently instruct plaintiff how to use the elevator in such a way as to avoid the danger that it might descend upon his head and injure him; (5) that defendant's failure to properly and sufficiently instruct plaintiff how to use the elevator was negligence amounting to want of ordinary care on defendant's part; (6) that the negligence specified in the fifth question was a proximate cause of plaintiff's injury; (7) that there was no failure on plaintiff's part to exercise ordinary care which contributed to cause his injury; (8) damages $5,000.

Upon the special verdict judgment was entered in favor of the plaintiff, and the defendant appealed.

For the appellant there was a brief by *Williams & Stern,* and oral argument by *Burdette Williams.* To the point that one who projects his head or body into an elevator shaft and is injured is guilty of contributory negligence, they cited *Powell v. Ashland I. & S. Co.* 98 Wis. 35, 73 N. W. 573; *Knapp v. Jones,* 50 Neb. 490, 70 N. W. 19; *Guichard v. New,* 9 App. Div. 485, 41 N. Y. Supp. 456; *Murphy v. Webster,* 151 Mass. 121, 23 N. E. 842; *S. C.* 156 Mass. 48, 30 N. E. 88; *Ramsdell v. Jordan,* 168 Mass. 505, 47 N. E. 244; *Mau v. Morse,* 3 Colo. App. 359, 33 Pac. 283; *Clancy v. Guaranty Construction Co.* 25 App. Div. 355, 50 N. Y. Supp. 800; *Cowen v. Kirby,* 180 Mass. 504, 62 N. E. 968; *Roberts v. Sanitas Nut Food Co.* 142 Mich. 589, 106 N. W. 68.

*Charles Voigt,* for the respondent.

VINJE, J.   The question whether the evidence sustains the finding of the jury exonerating the plaintiff from contributory negligence is the most serious one raised by the defendant.   Its own negligence in having in operation an elevator failing to comply with order No. 401 of the industrial commission requiring either a gate five and one-half feet in height or in lieu of that a gate not less than three and one-half feet in height and tell-tale chains is admitted.   In considering the question of plaintiff's contributory negligence it must be assumed that he knew in a general way the use of the elevator and how it operated, or at least the obvious physical facts attendant upon its operation.   He knew that it went up and down carrying freight on a platform; that it had a person to operate it; that it could be stopped at the different floors for the receiving or discharging of freight; and that it had no bell on the warehouse side to call the operator.   He was a Greek about nineteen years of age who had been in this country only since July 10, 1912, but apparently endowed with ordinary intelligence.   He had never operated the elevator, nor ridden upon this or other elevators before.   He did not know its mechanical construction nor by what means it was operated.   When directed by the assistant foreman to get a truck of material from the warehouse he knew it had to be brought to the paint shop by means of the elevator.   He brought the truck with the material on it to the elevator shaft in the warehouse, and not seeing the elevator there, and there being no bell to call the operator, he put his head over the gate and looked down to see if it was below, and was immediately injured by the elevator descending upon him.   This in substance is his evidence as to how he was injured and there is nothing to contradict it.   He claims he was not instructed how to use it, or warned of any danger, and the jury so found.   Of course it is perfectly easy to suggest, as defendant's counsel does, several ways in which he might have ascertained where the elevator was without putting his head over the gate

to look down the shaft. But that was a natural thing to do, though undoubtedly dangerous and known to be so to one whose attention had ever been directed to the manner in which the elevator operated and the power required to operate it. Undoubtedly the two main considerations that moved the industrial commission to require a gate five feet and a half high or tell-tale chains with a lower gate was an appreciation of the fact that persons about elevators would be likely almost involuntarily to put their heads into the shaft to look for it, even though they might know and appreciate the risk. The impulsive tendency to do so was evidenced by the frequency of such accidents, and hence the necessity of guarding against them by more than a mere knowledge of the risk, by providing for higher gates or tell-tale chains. In view of these considerations and the inexperience and age of the plaintiff, we have reached the conclusion that the evidence sustains the finding of the jury as to his freedom from contributory negligence. A number of cases from other jurisdictions are cited in defendant's brief wherein it has been held as matter of law that a person was guilty of contributory negligence in looking into an elevator shaft as plaintiff did. They all, however, differ more or less in the facts characterizing the conduct, and furnish no safe criteria to follow were the court inclined to rely upon precedent alone.

An inspection of the special verdict will show that the answers to questions 1, 2, and 7 entitled plaintiff to judgment. Alleged errors, therefore, which relate to other questions become immaterial.

An extended argument is made by defendant's counsel to the effect that it was error for the court to answer question 1, not because the answer was not in accordance with the fact, but because it indicated to the jury that a negative answer should be returned to the question relating to plaintiff's contributory negligence. We fail to see the force of the argument. Besides, if it be a conceded fact that defendant was

negligent, then the court could properly so find even if it did affect the question of contributory negligence. In such case it would be defendant's conduct and not the court's expression thereof that affected the result.

Exception is also taken to the charge of the court defining and explaining the meaning of the word "failure" used in the seventh question, not because such definitions and explanations were incorrect, but because they informed the jury of the effect of their answer to the question. In our opinion the definitions and explanations were superfluous, because they were no simpler and plainer than the word itself. . But if so, they only correctly informed the jury of the true meaning of the question—a very proper instruction to give and one no more open to the objection urged than the question itself.

Upon the question of plaintiff's contributory negligence the court instructed the jury:

"Of course you are also to consider whether he did in fact know and comprehend the danger, but in determining that, whether he did in fact know and comprehend the danger, you may consider whether, if he did know it, if it was apparent to him, if it was open and obvious to him, he would have put his head over the top of that gate and left it there till the elevator descended upon it."

The expression, "and left it there till the elevator descended upon it," might be a little misleading to one not having heard the evidence, as it might convey the idea that there was a conscious, voluntary leaving of his head in that position for a considerable length of time, whereas the testimony shows the elevator struck him immediately upon his looking into the shaft. The jury could not be misled by the statement of the court. In other respects it was proper for the court to call the jury's attention to the concrete situation. It is proper and common in instructing upon the question of contributory negligence to charge the jury to take into consideration all the facts and circumstances disclosed by the

·evidence surrounding the alleged negligent conduct. ˙ This specific conduct of the plaintiff was one of such facts which the jury had a right to consider in determining the question.

The jury awarded plaintiff $5,000 damages. He was .about nineteen years old at the time he was injured. He lost his sense of hearing in one ear, and partially in the other. Eight of the front teeth in the lower jaw, together with the ¦bone in which they were held, were knocked out; also two upper front teeth. The septum of the nose was crowded to ·one side, so as to totally close one opening, though this defect ·can be remedied by an operation. He was unconscious for a .long time, remained in the hospital twenty-two days, and ·claimed at the time of the trial that he grew dizzy when working to any great extent. The amount of damages, approved .as it is by the trial court, cannot be deemed excessive.

*By the Court.*—Judgment affirmed.